IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

O'DELL HALL, JR.,
  Plaintiff,

vs.              Case No. 3:06cv351/RV/EMT

LT. LEAVINS, et al.,
  Defendants.
_____/

### **FOURTH REPORT AND RECOMMENDATION**

  This case filed pursuant to 42 U.S.C. § 1983 is now before the court upon referral from the clerk. On December 11, 2006, the pro se Plaintiff, who is proceeding in forma pauperis in this action, filed a Second Amended Complaint (Doc. 16). Plaintiff named nineteen Defendants and claimed that Defendants violated his First Amendment right to petition the government for redress of grievances, his Fourth Amendment right to freedom from unreasonable searches and seizures, and his Fifth and Fourteenth Amendment rights to due process, as well as several provisions of the Florida Constitution and the Florida Administrative Code (Doc. 16 at 8 and attached pages). As relief, he sought millions of dollars from each Defendant (*id*.). On February 9, 2007, the court dismissed all but the following claims against the following Defendants: (1) Plaintiff's claim that Defendants Lt. Leavins, W.R. Sutton, and J.B. Johnson used excessive force against him on January 24, 2006, and (2) Plaintiff's claim that Defendants W.L. Gielow and D.T. Sanford violated Plaintiff's due process rights during a disciplinary hearing on January 31, 2006 (*see* Doc. 24). Additionally, as to these remaining Defendants, the court dismissed Plaintiff's claims against them to the extent he sued them in their official capacities (*id.*). The court directed service of the Second Amended Complaint on these remaining Defendants.

In July of 2007, Defendants filed motions to dismiss the complaint on the ground that Plaintiff's claims for damages were barred by Heck v. Humphrey, 512 U.S. 477, 486–87 (1994) and Edwards v. Balisok, 520 U.S. 641 (1997) (Docs. 50, 61). The motions were denied on February 25, 2008 (Doc. 110).

On April 24, 2008, Defendants Leavins, Johnson, and Sutton filed a special report and supporting documents (Doc. 120), and the same day, Defendants Gielow and Sanford filed a motion for summary judgment and supporting documents (Doc. 121). On April 28, 2008, the court advised the parties that at a future time, it may treat the special report as a motion for summary judgment, advised the parties of the importance and ramifications of Rule 56 summary judgment consideration, informed the parties of the requirements of materials that may be considered on summary judgment, and directed Plaintiff to respond to the special report and motion for summary judgment (Docs. 123, 124). After much discovery and several extensions of the deadline for Plaintiff to file a response, he failed to do so. On December 16, 2008, the court informed the parties that the special report would be construed as a motion for summary judgment as of January 16, 2008, and both motions for summary judgment would be taken under advisement on or after that date (Doc. 162). The court again gave the required summary judgment advisory to the parties and gave them until January 16, 2008 to submit additional argument or Rule 56 materials (*id.*). None of the parties submitted additional argument or materials.

Upon review of the summary judgment record, it is the opinion of the undersigned that the summary judgment motion filed by Defendants Gielow and Sanford should be denied. The summary judgment motion filed by Defendants Leavins, Johnson, and Sutton will be disposed of in a separate report and recommendation.

I.     BACKGROUND

Plaintiff was an inmate at the Santa Rosa Correctional Institution (SRCI) during the time frame relevant to his complaint (he has since been transferred to another correctional institution) (*see* Docs. 16, 107). As previously discussed, Plaintiff is suing Defendants Gielow and Sanford in their individual capacities and claims that they violated his due process rights during a disciplinary hearing on January 31, 2006 (Doc. 16 at 13–14, 18, 52, 53).

Plaintiff alleges the following facts in his verified Second Amended Complaint. On January 26, 2006, Plaintiff was notified of two allegedly false disciplinary reports, log #119-060218 and log #119-06225, charging him with violation codes 6-1 Disobeying Order and 2-1 Unarmed Assault, respectively (Doc. 16 at 13, 16; *see also* Doc. 1 at 14–17). The disciplinary reports apparently resulted from the alleged excessive force incident involving Defendant Leavins, Sutton, and Johnson (*see id.* at 44, 47, 48, 52, 53; *see also* Doc.121, Exs. A, B). A disciplinary hearing was held on January 31, 2006, and the disciplinary team was comprised of Defendants Gielow and Sanford (Doc. 16 at 14). At the disciplinary hearing, Plaintiff requested that Defendants Gielow and Sanford review the use of force video of the incident and hear the testimony of six inmates who were standing in the canteen line at the time of the incident, but Defendants Gielow and Sanford denied his requests (*id.* at 32). Plaintiff was convicted of the disciplinary charges and sentenced to disciplinary confinement and a suspension of privileges (*see* Doc. 121, Exs. A, B).

In his Second Amended Complaint, Plaintiff alleges he submitted informal and formal grievances and an administrative appeal to the Secretary's Office concerning the disciplinary proceeding (Doc. 16 at 8–9). Plaintiff indicates that copies of these grievances were previously submitted to the court in August of 2006, when he filed his initial complaint in this action (*id.*; *see also* Doc. 1 at 5, 13–28, 31–32, 35–41, 43, 49–53). One of the grievances, dated January 31, 2006, was directed to the warden and essentially appeared to challenge the disciplinary hearing that occurred earlier that day (Doc. 1 at 24). The words "NO RESPONSE" appear in Plaintiff's handwriting in the "Response" section of the grievance (*id.*). Another grievance, dated February 5, 2006, was directed to the Secretary's Office and complained about the use-of-force incident involving Lieutenant Leavins and Officers Sutton and Johnson (*id.* at 25). The grievance was stamped as received by the DOC Inmate Grievances department on February 8, 2006 and assigned log # 06-6-03767 (*id.*). On February 17, 2006, a representative of the Secretary's Office responded that the subject of the grievance was being investigated by the Office of the Inspector General and that a copy of Plaintiff's grievance would be forwarded to that office to be included in the investigation; this response was stamped "MAILED/FILED" on February 23, 2006 by the DOC Bureau of Inmate Grievance Appeals (*id.* at 25–27). Plaintiff directed another grievance, dated February 26, 2006, to the Secretary's Office complaining that he was in disciplinary confinement

for 60 days, allowed no phone calls, and received delayed delivery of his newspaper (*id.* at 28). Plaintiff additionally stated, "On 1/31/06, I was refuse [sic] the videotape, refuse [sic] all eyewitness" (*id.*). The words "NO RESPONSE" appear in Plaintiff's handwriting on the grievance (*id.*). There is no indication that the grievance was received by the Secretary's Office, although the grievance bears a stamp which states, "PROVIDED BY SANTA ROSA C.I. ON FEB 23 2006 FOR MAILING" (*id.*). Another grievance, dated June 2, 2006, was marked "emergency grievance" and directed to the Secretary's Office (*id.* at 50). Plaintiff complained that he had previously submitted several greivances to the Secretary's Office concerning threats and improper conduct by Lieutenant Leavins, Officer Johnson, Officer Sutton, Officer Hawthorn, and two unidentified officers, and Plaintiff complained that he could not get a copy of those grievances (*id.*). The grievance was stamped as received by the DOC Inmate Grievances department on June 8, 2006 and assigned log # 06-6-16375 (*id.*). On June 21, 2006, a representative of the Secretary's Office responded as follows, in relevant part:

> This office has received four formal grievances from you since February 2006. First Grievance Log #06603767 regarding excessive use of force complaint was received on 2/17/06, responded to on 2/17/06 and a copy mailed to you on 2/23/06. Second Grievance Log #066012984 regarding improper conduct complaint was received on 5/8/06, responded to on 5/16/06 and a copy mailed to you on 5/15/06. Third Grievance Log #06614203 regarding General Harassment complaint was received on 5/22/06, responded to on 5/25/06 and mailed same date. Finally Grievance Log 06614558 regarding improper conduct complaint was received on 5/24/06 responded to on 5/31/06 and mailed same date. Additional copies can be obtained through your attorney or the courts through a process called discovery.

(*id.* at 49). The Secretary's response was stamped "MAILED/FILED" on June 22, 2006 by the DOC Bureau of Inmate Grievance Appeals (*id.* at 50). None of the remaining grievances attached to the initial complaint relate to the disciplinary proceedings (*see id.* at 31–33, 35–41, 43, 49–53). Additionally, none of the grievances attached to Plaintiff's First Amended Complaint related to the disciplinary proceedings (Doc. 11 at 42–44).

Defendants Gielow and Sanford, in their motion for summary judgment, contend that dismissal of Plaintiff's claims against them is warranted because Plaintiff failed to properly exhaust his administrative remedies (Doc. 121 at 1–6). They specifically assert that Plaintiff failed to ultimately appeal the disciplinary decisions to the Secretary's Office (*id.* at 2). In support of this

contention, Defendants Gielow and Sanford submitted an affidavit of Rebecca Padgham, a Management Analyst I with the Florida Department of Corrections (DOC) (Doc. 121, Ex. C, Affidavit of Rebecca Padgham). In Ms. Padgham's affidavit, she states that appeals of grievances and direct grievances submitted to the Office of the Secretary are forwarded to the Bureau of Inmate Grievance Appeals (*id.*, ¶ 3). Upon receipt, the information is recorded and maintained in the DOC's automated Inmate Grievance logs, established in 1992 (*id.*, ¶ 4). Ms. Padgham states that following appropriate investigation and evaluation of the appeal or direct grievance, a response is provided to the inmate, and copies of the response are sent to the inmate's institution, the Central Records Office, and to the Bureau of Inmate Grievance Appeals (*id.*, ¶ 5). Ms. Padgham states that on April 21, 2008, she reviewed Plaintiff's grievance file and determined that he did not file an appeal to the Central Office regarding the disciplinary reports he received on January 24, 2006 at SRCI for disobeying and order and unarmed assault (*id.*, ¶ 6). Thus, Defendants Gielow and Sanford contend, Plaintiff's due process claims against them should be dismissed for failure to exhaust, while the excessive force claim against Defendants Sutton, Johnson, and Leavins should be allowed to go forward (Doc. 121 at 6).

Plaintiff did not submit anything in response to the motion for summary judgment.

II. LEGAL STANDARDS

    A. Summary Judgment Standard

In order to prevail on their motions for summary judgment, Defendants must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91 L. Ed. 2d 265 (1986). If Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "[T]he substantive law will identify which facts are material" and which are irrelevant. Anderson, 477 U.S. at 248. An issue of fact is material if it is a legal element of the claim under the applicable substantive law

which might affect the outcome of the case. *See id.*; *accord* Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).

When assessing the sufficiency of the evidence in favor of the nonmoving party, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust Co. v. Fidelity and Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)). The court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." Anderson, 477 U.S. at 249–50. "A mere 'scintilla' of evidence supporting the . . . [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting Anderson, 477 U.S. at 252, 106 S. Ct. at 2512). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. Celotex Corp., 477 U. S. at 324 (quoting Fed. R. Civ. P. 56(e)). Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994). The Eleventh Circuit has consistently held that conclusory allegations without specific supporting facts have no probative value, and are legally insufficient to defeat summary judgment. *See* Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000); Sammons v. Taylor, 967 F.2d 1533, 1544–45 & n.5 (11th Cir. 1992).

    B.    Exhaustion of Administrative Remedies

The Prison Litigation Reform Act, 42 U.S.C. § 1997e (PLRA), provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has stated that this "invigorated"

exhaustion requirement is the "centerpiece" of the PLRA. Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2382, 165 L. Ed. 2d 368 (2006). The exhaustion requirement helps to ensure that the "flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910, 914, 166 L. Ed. 2d 798 (2007). It also "attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Woodford, 126 S. Ct. at 2387 (quoting Porter v. Nussle, 534 U.S. 516, 525, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002)) (footnote omitted). The exhaustion requirement is mandatory, and there is no discretion to waive it. Woodford, 126 S. Ct. at 2382; Alexander v. Hawk, 159 F.3d 1321, 1324–26 (11th Cir. 1998). Additionally, the PLRA exhaustion requirement requires proper exhaustion, which means that a prisoner must comply with the procedural rules of the institution's grievance system. Woodford, 126 S. Ct. at 2387–88.

The Eleventh Circuit has not decided, as some of its sister circuits have, how much less than perfect compliance with administrative remedies is enough to constitute exhaustion, or what, if any, exceptions to the exhaustion requirement exist. *See* Dole v. Chandler, 438 F.3d 804, 811 (7th Cir. 2006) (holding that a prisoner properly exhausted his administrative remedies when the jail lost his timely grievance form, but the prisoner did not attempt to re-file his complaint); Hemphill, 380 F.3d at 689 (recognizing "special circumstances" that permit less than perfect compliance, including reasonable but incorrect readings of the administrative procedures, and recognizing estoppel and failure to raise or preserve the defense as exceptions to the exhaustion requirement); Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004) (holding that substantial compliance with administrative procedures will exhaust them under the PLRA); Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002) (if applicable prison or jail regulations do not prescribe any particular content to inmate grievances, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming."); *see also* Woodford, 126 S. Ct. at 2393 (Breyer, J., concurring) (recognizing that § 1997e(a) requires proper exhaustion, but suggesting that traditional exceptions to administrative exhaustion also apply to it).

The administrative rules of the DOC include an inmate grievance procedure, the goal of which is "to provide an inmate with a channel for the administrative settlement of a grievance . . . provid[e] additional means for internal resolution of problems and improv[e] lines of communication . . . [and] provide a written record in the event of subsequent judicial ro administrative review." Fla. Admin. Code r. 33-103.001(1). The DOC rules establish a three-step grievance process that includes an informal grievance, formal grievance, and appeal to the Office of the Secretary of the DOC. *See* Fla. Admin. Code rr. 33-103.005 to 103.007. Grievances of disciplinary action may bypass the informal grievance step and be filed directly with the warden. *Id.*, rr. 33-103.006(3)(b), 33-1-3.002(15)(d)1. If the matter is not resolved at the institutional level, the inmate must file an appeal to the Central Office. *Id.*, 33-103-007(5).

With regard to the mailing of grievances, the administrative rules provide:

(8) Mailing Procedures. The warden . . . shall establish a procedure in the institution . . . for processing those grievances which require mailing. Inmates who are filing grievances that require mailing shall be required to utilize the procedure set forth in this rule when processing their grievances or appeals to . . . the Bureau of Inmate Grievance Appeals in the central office. The institution or facility shall provide postage for grievances submitted through this process. Procedures implemented shall include, at a minimum, the following:

. . . .

    (b) The establishment of a logging and tracking system to record and document receipt and mailing of inmate grievances.

    (c) A requirement that the staff person designated to accept the grievance to be mailed shall:

        1. Complete the receipt portion of the DC1-303 form for appeals being forwarded to central office by entering a log/tracking number, date of receipt, and sign as the recipient.

        2. Record receipt of the grievance in the institutional log. The staff person shall not read or classify the grievance.

        3. Place the grievance in the mail through the institution or facility mail service within one workday.

    (d) The inmate shall have his grievance ready for mailing at the time he turns it over to staff for processing as described in paragraph (c) above.

>  (9) If an inmate is in a special housing unit and wants to file a grievance he shall submit the grievance to designated staff by placing the grievance in a locked box. The designated staff person shall deliver the box to the institutional grievance coordinator who will unlock the box, remove the grievances, log the grievances, and provide the inmates with receipts.

Fla. Admin. Code r. 33-103.006(8).

### III. CONCLUSIONS OF LAW REGARDING MATERIAL FACTS

Defendants contend the summary judgment record conclusively establishes that Plaintiff failed to exhaust his administrative remedies. Upon review of the grievances submitted by Plaintiff with his initial complaint, which Plaintiff clearly referenced in the "Exhaustion" section of the Second Amended Complaint served upon Defendants (*see* Doc. 16 at 8–9), the undersigned concludes that there is sufficient evidence from which a reasonable factfinder could conclude that Plaintiff complied with the DOC's administrative grievance procedure regarding his due process claims against Defendants Gielow and Sanford. In Plaintiff's grievance directed to the Secretary's Office, dated February 26, 2006, Plaintiff complained that on January 31, 2006, he was placed in disciplinary confinement for 60 days, allowed no phone calls, and received delayed delivery of his newspaper (Doc. 1 at 28). Plaintiff additionally stated, "On 1/31/06, I was refuse [sic] the videotape, refuse [sic] all eyewitness" (*id.*). The grievance bears a date stamp initialed by Plaintiff which states, "PROVIDED BY SANTA ROSA C.I. ON FEB 23 2006 FOR MAILING" (*id.*). Although there appears to be no dispute that the Secretary's Office did not receive the grievance,[1] there is sufficient evidence from which a factfinder could conclude that Plaintiff provided a grievance appealing the disciplinary decisions to SRCI for mailing to the Central Office. According to the DOC's administrative rules, it was the responsibility of institutional staff, not Plaintiff, to ensure that the grievance was actually mailed to the Central Office. Furthermore, although the DOC rules provide that expiration of the time limit for responding to grievances and appeals entitle an inmate to proceed to the next step of the grievance process (*see* Fla. Admin. Code 33-103.011(4)), Plaintiff's appeal to the Secretary's Office was the last step of the process for appealing the

---

[1] This is evidenced by Ms. Padgham's affidavit, the words "NO RESPONSE" written on the grievance in Plaintiff's handwriting (*see* Doc. 1 at 28), and the response to Plaintiff's grievance dated June 2, 2006, in which the Secretary's Office listed the grievances it had received from Plaintiff since February, and none of those grievances concerned the disciplinary proceedings held on January 31, 2006 by Defendants Gielow and Sanford,
Case No.: 3:06cv351/RV/EMT

disciplinary decisions. Therefore, Defendants Gielow and Sanford's motion for summary judgment based upon Plaintiff's failure to appeal the disciplinary decisions to the Secretary's Office should be denied.

Accordingly it is respectfully **RECOMMENDED**:

1. That Defendants Gielow and Sanford's motion for summary judgment (Doc. 121) be **DENIED**.

2. That this case be referred to the undersigned for further proceedings.

At Pensacola, Florida, this 29th day of January 2009.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**