IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

O'DELL HALL, JR.,
      Plaintiff,

vs.                              Case No. 3:06cv351/RV/EMT

LT. LEAVINS, et al.,
      Defendants.
_____/

## FIFTH REPORT AND RECOMMENDATION

Plaintiff O'Dell Hall, Jr. ("Hall") proceeds pro se and in forma pauperis in this action brought pursuant to 42 U.S.C. § 1983. Presently before the court are motions for summary judgment filed by Defendants Sutton, Johnson, Leavins, Gielow, and Sanford (Docs. 120, 179). Hall has not responded. For the reasons stated below, the court recommends that the motions for summary judgment be granted.

I.      BACKGROUND

Hall, an inmate who was incarcerated at Santa Rosa Correctional Institution ("SRCI") at the time the events at issue in this case took place, initiated the action by filing a civil rights complaint on August 15, 2006 (Doc. 1). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive actions. *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b). In the Second Amended Complaint (Doc. 16), which is the operative pleading in this case, Hall names nineteen Defendants and claims that Defendants violated his First Amendment right to petition the government for redress of grievances, his Fourth Amendment right to freedom from unreasonable searches and seizures, and his Fifth and Fourteenth Amendment rights to due process, as well as several provisions of the Florida Constitution and the Florida Administrative Code (Doc. 16,

Statement of Claims). As relief, he seeks millions of dollars from each Defendant (Doc. 16, Relief Requested). On February 9, 2007, the court dismissed all but the following claims against the following Defendants: (1) Hall's claim that Defendants Lt. Leavins, W.R. Sutton, and J.B. Johnson used excessive force against him on January 24, 2006, and (2) Hall's claim that Defendants W.L. Gielow and D.T. Sanford violated his due process rights during disciplinary hearings on January 31, 2006 (*see* Doc. 24). Additionally, as to these remaining Defendants, the court dismissed Hall's claims against them to the extent he sued them in their official capacities (*id.*). The court directed service of the Second Amended Complaint on the remaining five Defendants.

In July of 2007, Defendants filed motions to dismiss the complaint on the ground that Plaintiff's claims for damages were barred by Heck v. Humphrey, 512 U.S. 477, 486–87 (1994) and Edwards v. Balisok, 520 U.S. 641 (1997) (Docs. 50, 61). The motions were denied on February 25, 2008 (Doc. 110).

On April 24, 2008, Defendants Leavins, Johnson, and Sutton filed a special report and supporting documents (Doc. 120). The court advised the parties that at a future time, it may treat the special report as a motion for summary judgment, advised the parties of the importance and ramifications of Rule 56 summary judgment consideration, informed the parties of the requirements of materials that may be considered on summary judgment, and directed Hall to respond to the special report and motion for summary judgment (Docs. 123, 124). After much discovery and several extensions of the deadline for Hall to file a response, he failed to do so. On December 16, 2008, the court informed the parties that the special report would be construed as a motion for summary judgment as of January 16, 2009, and the motion for summary judgment would be taken under advisement on or after that date (Doc. 162). The court again gave the required summary judgment advisory to the parties and gave them until January 16, 2009, to submit additional argument or Rule 56 materials (*id.*). None of the parties submitted additional argument or materials.

The same day that Defendants Leavins, Johnson and Sutton filed their special report, Defendants Gielow and Sanford filed a motion for summary judgment and supporting documents contending Hall's due process claims should be dismissed for his failure to exhaust administrative remedies (Doc. 121). Defendants Gielow and Sanford's motion for summary judgment was denied on March 4, 2009 (Doc. 172). Defendants Gielow and Sanford then filed a special report and

supporting documents (Docs. 179, 181). The court advised the parties that at a future time, it may treat the special report as a motion for summary judgment, advised the parties of the importance and ramifications of Rule 56 summary judgment consideration, informed the parties of the requirements of materials that may be considered on summary judgment, and directed Hall to respond to the special report and motion for summary judgment (Doc. 180). On June 24, 2009, the court informed the parties that the special report would be construed as a motion for summary judgment as of July 24, 2009, and the motion for summary judgment would be taken under advisement on or after that date (Doc. 162). Hall did not file a response to the summary judgment motion.

Upon review of the summary judgment record, it is the opinion of the undersigned that the summary judgment motions filed by Defendants should be granted.

II.     LEGAL STANDARDS

A.      <u>Summary Judgment Standard</u>

In order to prevail on their motions for summary judgment, Defendants must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91 L. Ed. 2d 265 (1986). If Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "[T]he substantive law will identify which facts are material" and which are irrelevant. <u>Anderson</u>, 477 U.S. at 248. An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.*; *accord* <u>Tipton v. Bergrohr GMBH-Siegen</u>, 965 F.2d 994, 998 (11th Cir. 1992).

When assessing the sufficiency of the evidence in favor of the nonmoving party, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993). "If reasonable minds could differ on the inferences arising from undisputed

facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust Co. v. Fidelity and Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)). The court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." Anderson, 477 U.S. at 249–50. "A mere 'scintilla' of evidence supporting the . . . [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting Anderson, 477 U.S. at 252, 106 S. Ct. at 2512). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. Celotex Corp., 477 U. S. at 324 (quoting Fed. R. Civ. P. 56(e)). Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. Id.; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994). The Eleventh Circuit has consistently held that conclusory allegations without specific supporting facts have no probative value, and are legally insufficient to defeat summary judgment. See Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000); Sammons v. Taylor, 967 F.2d 1533, 1544–45 & n.5 (11th Cir. 1992).

    B.    Eighth Amendment Standard — Excessive Force

Claims of excessive force by prison officials fall under the Eighth Amendment's proscription against cruel and unusual punishment. The standard applied to Eighth Amendment claims has a subjective and an objective component. Under the subjective component, to sustain an Eighth Amendment challenge it must be shown that prison officials' actions amounted to an "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1986). "Force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting Whitley, 475 U.S. at 320–21). In determining whether an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force;

the relationship between that need and the amount of force used; the extent of the threat to the safety of staff and inmates, as reasonably perceived by officials; the extent of injury; and any efforts made to temper the severity of the response." Hudson v. McMillian, 503 U.S. 1, 7–8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992); *see also* Whitley, 475 U.S. at 321; Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). That officials followed prison regulations in administering force or restraint provides evidence that they acted in good faith and not to inflict pain. Campbell, 169 F.3d at 1376 (citation omitted). Thus, as summarized in Campbell, "[p]recedent dictates that [the determination whether defendants acted maliciously and sadistically for the very purpose of causing harm] be guided by the five Hudson/Whitley factors outlined above, by deference to prison officials' punitive judgments, and by this Court's previous holdings that compliance with prison policies evidences officials' good faith." *Id.* The Court in Whitley narrowed the precise inquiry applicable when deciding whether officials are entitled to judgment as a matter of law:

> courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

Whitley, 475 U.S. at 322 (emphasis added).

In addition to the "unnecessary and wanton infliction of pain" standard, referred to as the "subjective component" of the excessive force standard, there exists an "objective component" that determines if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. *See* Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321, 2326, 115 L. Ed. 2d 271 (1991). In situations involving allegations of excessive force, the Supreme Court has abrogated any requirement that the resulting injury be "significant." Hudson, 503 U.S. at 9. However, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Id.* (quotation omitted). "[Excluded] from constitutional recognition [are] de minimis uses of physical force, provided that the use of force is not of a sort

repugnant to the conscience of mankind." *Id.*, 503 U.S. at 9–10 (quotation marks and citation omitted); <u>Nolin v. Isbell</u>, 207 F.3d 1253, 1258 (11th Cir. 2000) ("[A] minimal amount of force and injury . . . will not defeat an officer's qualified immunity."). The Eleventh Circuit has repeatedly held that a push or shove that causes pain and necessitates no or merely minor medical treatment is not a constitutional violation, even where the prisoner was restrained and no further force was necessary. *See, e.g.*, <u>Jones v. City of Dothan</u>, 121 F.3d 1456, 1460–61 (11th Cir. 1997); <u>Post v. City of Fort Lauderdale</u>, 7 F.3d 1552, 1556 (11th Cir. 1993), *modified*, 14 F.3d 583 (11th Cir. 1994). Furthermore, a conclusory allegation that the prisoner suffered serious injury should be discounted, and the absence of further evidence of injury justifies the conclusion that the use of force on the prisoner was minimal. <u>Brown v. Smith</u>, 813 F.2d 1187 (11th Cir. 1987); <u>Bennett v. Parker</u>, 898 F.2d 1530, 1533 (11th Cir. 1990).

      C.    <u>Due Process Standard</u>

      In <u>Wolff v. McDonnell</u>, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), the Supreme Court set forth minimum requirements of procedural due process which should be accorded prisoners in disciplinary proceedings: (1) advance written notice of the claimed violation; (2) a written statement of the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in defense, when to do so would not be unduly hazardous to institutional safety or correctional goals. 418 U.S. at 563–66. The Court also indicated a reluctance to review the judgments of prison administrators and acknowledged that prison disciplinary proceedings do not require the "full panoply of rights" due a defendant in a criminal proceeding. *Id.* at 556. Consequently, there is no constitutional right of cross-examination and confrontation of witnesses in a prison disciplinary hearing. *Id.* at 567–68; <u>Young v. Jones</u>, 37 F.3d 1457, 1460 (11th Cir. 1994). An inmate's right to attend a prison disciplinary hearing is also one of the essential due process protections afforded by the Fourteenth Amendment and recognized in <u>Wolff</u>. *See* <u>Battle v. Barton</u>, 970 F.2d 799, 782 (11th Cir. 1992). However, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." <u>Bell v. Wolfish</u>, 441 U.S. 520, 547, 99 S. Ct. 1861, 1878, 60 L. Ed. 2d 447 (1979).

Additionally, in <u>Superintendent v. Hill</u>, 472 U.S. 445, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985), the Supreme Court held that a decision of a prison disciplinary board need only be supported by "some evidence." 472 U.S. at 455. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is <u>any evidence</u> in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455–56. (emphasis added).

However, due process protections do not attach to all disciplinary proceedings. In cases where a disciplinary decision does not result in the loss of gain time, and the only penalty is placement in disciplinary confinement for thirty days, due process protections do not attach. *See* <u>Sandin v. Conner</u>, 515 U.S. 472, 485, 115 S. Ct. 2293, 2301, 132 L. Ed. 2d 418 (1995). This is so because "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.*, 515 U.S. at 485–86.

## III. DISCUSSION

### A. Excessive Force Claim Against Defendants Leavins, Sutton, and Johnson

Hall claims that Officer Johnson choked him, Officer Sutton shoved him, and Officers Sutton and Johnson, in the presence of Captain Leavins, slammed Hall to the concrete floor during an escort to C-dorm, resulting in injury to Hall's wrist, forehead, and leg. In his complaint, Hall states that on January 24, 2006, upon his arrival at SRCI from another institution, he informed the medical department that he had a medical pass for "no lifting," but the pass expired the day before, on January 23, 2006 (Doc. 16 at 12).[1] Hall states that at approximately 1:30 p.m. that day, Officer Johnson strip searched him and placed him in full restraints (*id.* at 12, 44). Hall states he passed gas, and Officer Johnson then choked him and ordered him to carry his property to C-dorm (*id.* at 12–13, 44; Doc. 120, Sutton Aff. ¶ 7(b), Johnson Aff. ¶ 7(b))). Hall states Officer Sutton shoved him for not saying "Yes, sir" to Officer Johnson (Doc. 16 at 13, 47). The parties do not dispute that at approximately 2:05 p.m., Officers Sutton and Johnson escorted Hall to C-dorm (Doc. 16 at 13, 44, 47; Doc. 120, Ex. E, Affidavit of William Sutton ¶ 7(a), Ex. F. Affidavit of Jeremiah Johnson

---

[1] The page numbers used in this Report and Recommendation are the page numbers assigned by the CM/ECF docketing system, as Plaintiff failed to number all of the pages of his 58-page complaint (*see* Doc. 16).

¶ 7(a)). During the escort, Hall stopped four or five times and, upon arriving in front of the laundry, dropped his property, laid on this back and declared a medical emergency, stating, "I want to see a white shirt. I'm not gonna carry this s*** anymore." (Doc. 16 at 13, 44, 47; Doc. 120, Sutton Aff. ¶ 7(b), Johnson Aff. ¶ 7(b)). At 2:08 p.m., Captain Leavins arrived at the scene and ordered Hall to his feet and Officers Johnson and Sutton to assist Hall to his dormitory (Doc. 16, at 13, 44, 47, 48; Doc. 120, Ex. G, Affidavit of Donald Leavins ¶¶ 4(a–c); Sutton Aff. ¶¶ 7(c, d), Johnson Aff. ¶¶ 7(c, d)). Upon arriving at the entrance of C-dorm, Hall fell face down on the concrete floor, causing his handcuffs to break apart (Doc. 16 at 13, 44, 47, 48; Doc. 120, Sutton Aff. ¶ 7(d, e), Johnson Aff. ¶ 7(e); Leavins Aff. ¶¶ 7(c, d)).[2] Officer Sutton placed his hand on Hall's shoulder and ordered him to submit to hand restraints (Doc. 120, Sutton Aff. ¶¶ 7 (e, f), Johnson Aff. ¶ 7(f), Leavins Aff. ¶ 4(d)). Officer Sutton grasped Hall's left hand with both of his hands and forced Hall's left hand behind his back (Doc. 120, Sutton Aff. ¶ 7(g)). Officer Johnson grasped Hall's right arm and placed wrist restraints upon his right hand (Doc. 120, Sutton Aff. ¶ 7(h), Johnson Aff. ¶ 7(g)). During the video taping of this incident, the camera malfunctioned and another camera was retrieved and began recording at approximately 2:21 p.m. (Doc. 120, Leavins Aff. ¶ 4(h)). When the video camera arrived, Officers Sutton and Johnson assisted Hall to his feet and escorted him to C-dorm (Doc. 120, Sutton Aff. ¶¶ (h, i), Johnson Aff. ¶ 7(h)). The medical staff conducted a post-use of force physical examination of Hall at 2:40 p.m. (Doc. 120, Ex. I). As a result of the incident, Hall suffered tenderness in his left wrist with no swelling or bony deformity, two superficial abrasions and a two-inch "knot" or hematoma on his forehead, and two superficial abrasions, a bruise and some swelling to his right leg (Doc. 16 at 13, 44, 47, 48; Doc. 120, Exs. H, I). The medical staff treated Hall's injuries by cleaning his wounds, applying antibacterial ointment to his abrasions, dressing his knee with two large BandAids, and offering a tetanus shot (Doc. 120, Ex. H). Medical staff did not prescribe a treatment regimen for the injuries other than instructing Hall to clean the abrasions with soap and water, request a pain reliever if needed, and return to the medical department through sick call if needed (*id.*). There is no evidence that Hall sought further medical attention for any of these

---

[2]The parties dispute the cause of Plaintiff's fall. Plaintiff asserts Officers Johnson and Sutton "ferocious[ly] attack[ed] me, slaming [sic] me to the ground/concrete slab causing the black box and handcuff to broke lose [sic]" (Doc. 16 at 13, 44, 47, 48). Defendants Leavins, Sutton and Johnson assert Plaintiff pulled away from Sutton's custodial touch and fell face down to the floor (*see* Doc. 120, Sutton Aff. ¶ 7(d), Johnson Aff. ¶ 7(d), Leavins Aff. ¶ 4(c)).

injuries. Additionally, there is no evidence that Hall suffered any injuries from Officers Johnson and Sutton's conduct prior to the escort to C-dorm, that is, Officer Johnson's choking Hall and Officer Sutton's shoving him.

In their motion for summary judgment, Defendants Johnson and Sutton deny that they used excessive or improper force upon Hall on the date in question, and they and Defendant Leavins deny that Leavins ordered them to do so (Doc. 120 at 7–10). Defendants admit that an incident occurred during the escort to C-dorm, but it involved Officers Johnson and Sutton's use of force <u>after</u> Hall fell to the ground (*id.*).[3]

Viewing the evidence in the light most favorable to Hall, as it must, *see* <u>Hairston</u>, 9 F.3d at 918, the court concludes that the amount of force used by Defendants was insufficient as a matter of law to support an excessive force claim even under Hall's version of the events. Based upon Hall's version of the facts, Officer Johnson "choked" him after Hall passed gas, Officer Sutton shoved him for not saying "Yes, sir" to Officer Johnson, and Sutton and Johnson "slammed" him to the floor during the escort to C-dorm. The undisputed evidence shows that Hall suffered no injuries from the alleged choke by Officer Johnson or the shove by Officer Sutton prior to the escort to C-dorm, and Hall's only injuries from the shove to the floor during the escort were a tender wrist, superficial abrasions on his knee and forehead, a hematoma on his forehead, and a bruise and swelling on his leg. These injuries, which would be treatable at home by the ordinary citizen, indicate that the uses of force by Officers Sutton and Johnson were not objectively, sufficiently serious for Eighth Amendment purposes.

In <u>Hudson v. McMillian</u>, the Supreme Court rejected the theory that an inmate who alleges excessive use of force is required to show serious injury <u>in addition to</u> the unnecessary and wanton infliction of pain. 503 U.S. at 10. With respect to the "injury" issue in excessive force cases, it is important to review what the Court said in <u>Hudson</u> in context, and not confuse the extent of injury incurred with the more relevant question of whether the force used was excessive:

---

[3]Plaintiff's excessive force claim involves Defendants' conduct which allegedly <u>caused</u> his fall to the ground and occurred <u>prior to</u> the fall, not conduct that occurred <u>after</u> the fall. Therefore, any evidence regarding events occurring after Hall's fall is irrelevant to the issue of whether Defendants are entitled to summary judgment on Plaintiff's excessive force claim.

Case No.: 3:06cv351/RV/EMT

The objective component of an Eighth Amendment claim is [ ] contextual and responsive to "contemporary standards of decency." Estelle, *supra*, 429 U.S. at 103, 97 S. Ct. at 290. For instance, extreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society," Rhodes, *supra*, 452 U.S. at 347, 101 S. Ct. at 2399, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson, *supra*, 501 U.S. at 298, 111 S. Ct. at 2324 (quoting Rhodes, *supra*, 452 U.S. at 347, 101 S.Ct. at 2399) (citation omitted). A similar analysis applies to medical needs. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *See* Estelle v. Gamble, 429 U.S. at 103–104, 97 S. Ct. at 290–291.

In the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. *See* Whitley,[ ] *supra*, 475 U.S. at 327, 106 S. Ct. at 1088. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today. *See* Estelle, *supra*, 429 U.S. at 102, 97 S. Ct. at 290 (proscribing torture and barbarous punishment was "the primary concern of the drafters" of the Eighth Amendment); Wilkerson v. Utah, 99 U.S. 130, 136, 25 L. Ed. 345 (1879) ("[I]t is safe to affirm that punishments of torture . . . and all others in the same line of unnecessary cruelty, are forbidden by [the Eighth Amendment]").

That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See* Johnson v. Glick, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'" Whitley, 475 U.S. at 327, 106 S. Ct. at 1088 (quoting Estelle, *supra*, 429 U.S. at 106, 97 S. Ct. at 292) (internal quotation marks omitted).

Hudson, 503 U.S. at 8–10. Thus, the relevant inquiry under the objective prong of Hudson is whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. *See* Hudson, 503 U.S. at 8. In Hudson, the Supreme Court held that Hudson's injuries, which included bruises, swelling, loosened teeth, and a cracked dental plate, were not de minimis for Eighth Amendment purposes. Hudson, 503 U.S. at 10.

There are several Eleventh Circuit cases addressing the issue of whether there was sufficient evidence at the summary judgment stage, including evidence of the plaintiff's injuries, to establish that the defendant officer's use of force was more than de minimis. *Compare* <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1198 (11th Cir. 2002) (holding that officer's use of force was "plainly excessive, wholly unnecessary, and grossly disproportionate" where, based upon plaintiff's version of the facts, defendant police officer, after arresting and handcuffing her, led her to the back of her car and slammed her head against the trunk even though plaintiff posed no threat at all to the officer or to anyone else and no risk of flight, and despite the fact that plaintiff did not suffer any injuries from the slamming of her head[4]), *and* <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1302 (11th Cir. 2002) (holding that the kinds of injuries the prisoner suffered, including rib fractures, back injuries, lacerations to the scalp, and abdominal injuries that required nine days of hospitalization and months of rehabilitation, could not have been the result of a de minimis use of force), *and* <u>Slicker v. Jackson</u>, 215 F.3d 1225 (11th Cir. 2000) (holding that evidence taken in light most favorable to plaintiff was sufficient to raise a question of fact as to whether officer's actions constituted excessive and not de minimis force where evidence showed that officer who arrested plaintiff placed him in handcuffs, and then, after plaintiff had been fully secured, slammed his head into the pavement and kicked him in the leg, head, and back), *and* <u>Harris v. Chapman</u>, 97 F.3d 499, 505–06 (11th Cir. 1996) (holding that defendant officer's use of force was more than de minimis where several officers, including the defendant, kicked and beat Harris, and defendant officer snapped Harris's head back with a towel, slapped him twice in the face, and harassed him with racial epithets, because the kicking and use of the towel caused or exacerbated Harris's back condition, although noting that it was a "very close case" as to whether force used by defendant officer was de minimis), *with* <u>Jones v. City of Dothan</u>, 121 F.3d 1456, 1460–61 (11th Cir. 1997) (holding that while the use of force, including "slamming" plaintiff against a wall, kicking his legs apart, requiring him to raise his arms above his head, and pulling his wallet from his pants, causing plaintiff to experience pain from having to lift his arms since he had previously suffered a stroke and pain in his arthritic knee from having his legs kicked apart, for which the plaintiff later received minor medical treatment, may have been unnecessary,

---

[4]The plaintiff submitted evidence that she suffered injury to her wrists as a result of the officer's pre-arrest grabbing her by the wrist, pulling her out of her car by the wrist, and shoving her hand against her back; however, the court did not determine that the officer's pre-arrest conduct was excessive. <u>Lee</u>, 284 F.3d at 1191–92, 1198.

the actual force used and the injury inflicted were both minor in nature), *and* <u>Gold v. City of Miami</u>, 121 F.3d 1442, 1446–47 (11th Cir. 1997) (holding that minor nature of plaintiff's injuries, that is, twenty minutes of pain and skin abrasions from handcuffs, for which plaintiff did not seek medical treatment, reflected that minimal force was used to apply the handcuffs).

A comparison of unpublished Eleventh Circuit cases evaluating whether the amount of force, as evidenced by the inmate's injuries, was de minimis is also helpful, although the undersigned cites the unpublished cases only as persuasive authority and recognizes that the opinions are not considered binding precedent. *See* 11th Cir. R. 36-2. *Compare* <u>Hasemeier v. Shepard</u>, 252 Fed. Appx. 282, 284–85 (11th Cir. 2007) (unpublished) (evidence of injury including unconsciousness, cuts, bruises, and broken dental bridge resulting from beating was sufficient to create genuine issue of material fact as to whether officers applied excessive force), *and* <u>Clark v. Argutto</u>, 221 Fed. Appx. 819, 825–26 (11th Cir. 2007) (unpublished) (inmate presented evidence from which jury could conclude that force applied by officer was excessive where officer repeatedly tightened inmate's hand restraint in response to inmate's complaints of pain and numbness and kicked restrained inmate to the floor hard enough that inmate hit his head and became dazed and disoriented, and injuries, including abrasions and nerve damage to inmate's wrist, took several weeks to heal and left scars, a possible cyst, and some pain, numbness, and stinging; while injuries were not severe, they were not de minimis), *with* <u>McCall v. Crosthwait</u>, 2009 WL 1904146, at *1–2 (11th Cir. July 2, 2009) (unpublished) (officer's use of force and extent of pretrial detainee's injuries were de minimis and, therefore, failed to establish a constitutional violation, where officer pushed pre-trial detainee out of jail's elevator, causing him to hit partially open steel cell door and fall against plexiglass window, and detainee suffered bruised shoulder and elbow, for which he received prescription for ibuprofen), *and* <u>Johnson v. Moody</u>, 206 Fed. Appx. 880, 885 (11th Cir. 2006) (unpublished) (minor nature of injury suggested that officer's pushing or kicking of metal tray door on inmate's hand was de minimis use of force where medical records belied inmate's claim that his injury was not de minimis because: (1) he was given a tetanus shot, and he was subsequently treated with bandages and non-prescription pain relievers, (2) his finger was not broken or fractured, (3) there was no evidence that he suffered any permanent injury or debilitating pain, and (4) fact that Johnson made sick call requests for five months after incident did not mean that his subjective complaints of pain were

accurate or that his injury was serious), *and* <u>Sepulveda v. Burnside</u>, 170 Fed. Appx. 119, 124 (11th Cir. 2006) (unpublished) (claim that officer on one occasion jerked inmate by the ankle while checking his leg shackles was de minimis use of force).

The case at bar lies between <u>Harris v. Chapman</u> and <u>McCall v. Crosthwaite</u>, assuming, as the court must, that Hall has been truthful in his allegations as to the amount of force used and the extent of his injuries. As previously noted, in <u>Harris</u>, the Eleventh Circuit deemed it a "very close case" as to whether the force used was de minimis and appeared swayed by the fact that the defendant's conduct caused or exacerbated the plaintiff's continuing back injury. In the instant case, there is no evidence that Hall suffered a continuing injury. Additionally, the nature of the force used and the evidence of injury in the instant case are more similar to those in <u>McCall</u>. The pushing of an inmate and causing him to hit a steel door and fall against a plexiglass window, as in <u>McCall</u>, and pushing an inmate to the concrete floor are similar in nature. In <u>McCall</u>, the inmate suffered a bruised shoulder and elbow and received a prescription for a pain reliever, and in the instant case, Hall suffered tenderness in his wrist, two superficial abrasions and a two-inch "knot" or hematoma on his forehead, and a bruise, two superficial abrasions, and some swelling to his leg. Hall required no medical treatment other than cleaning and dressing his abrasions. In neither case was there evidence of permanent injury or debilitating pain. Thus, neither McCall nor Plaintiff required more than "first aid" treatment.

Viewing the facts in the light most favorable to Hall, the undersigned concludes that the evidence is insufficient to raise a question of fact as to whether the uses of force by Officers Sutton and Johnson were more than de minimis. Assuming that Officer Johnson "choked" Hall after he passed gas, Officer Sutton shoved him for not saying "Yes, sir" to Officer Johnson, and both officers "slammed" Hall to the floor during the escort, this evidence does not allow a reasonable inference to be drawn that the officers' conduct constituted more than de minimis uses of force.[5] In light of

---

[5]The facts of the instant case are similar to the facts in <u>Robinson v. Davis</u>, No. 3:06cv403RV/EMT, 2009 WL 153162, at *21 (N.D. Fla. Jan. 22, 2009) (shoving shackled inmate to the ground, resulting in injury to abrasions to inmate's knee and ankle and injury to his toe, was de minimus use of force). Furthermore, the instant facts are distinguishable from other cases in this district which found more than a de minimis use of force. *See, e.g.,* <u>Huggins v. Johnson</u>, No. 5:05cv248/SPM/MD, 2006 WL 3667254, at *4 (N.D. Fla. Dec. 12, 2006) (repeated punching and kicking of inmate's face and head while he was handcuffed and lying on the ground, causing extreme swelling to face, black eye, chipped tooth, and injury to right knee, could constitute more than de minimis use of force); <u>Borroto v. McDonald</u>, No. 5:04cv165/RH/WCS, 2006 WL 2789152, at *1 (N.D. Fla. Sept. 26, 2006) (beating a handcuffed prisoner and slamming

this conclusion, Plaintiff's claim against Captain Leavins for allegedly ordering Sutton and Johnson to "slam" Hall to the floor during the escort does not state a violation of the Eighth Amendment. Accordingly, Defendants Sutton, Johnson, and Leavins are entitled to summary judgment in their favor on Hall's claim that they engaged in excessive force in violation of the Eighth Amendment.

B.     Due Process Claim Against Defendants Gielow and Sanford

Hall claims that Officers Gielow and Sanford violated his due process rights during two disciplinary hearings by refusing his requests to present witnesses and other evidence. The evidence submitted by Officers Gielow and Sanford shows that on January 26, 2006, Hall was notified of two disciplinary reports, Log #119-060218 and Log #119-06225, charging him with violation codes 6-1 Disobeying Order and 2-1 Unarmed Assault, respectively (Doc. 16 at 13; Doc. 179, Exs. 1, 8). The basis for the disobeying order charge was the following disciplinary report written by Officer Johnson:

> On 01/24/06 at approx. [sic] 2:05 p.m. while assigned as a C-dorm escort officer myself and Officer Sutton were escorting Inmate Hall to C-dorm. Upon arriving in front of the laundry Inmate Hall dropped his property and laid down on his back. Inmate Hall then stated, "I want to see a white shirt, I'm not gonna carry this s*** anymore." Lt. Leavins arrived and ordered the inmate to his feet. Inmate Hall complied with assistance from myself and Officer Sutton.

(Doc. 179, Ex. 8). The basis for the unarmed assault charge was the following disciplinary report written by Officer Sutton:

> On 1/24/06 at approx [sic] 2:15 p.m. while assigned as CM escort, myself [sic] and Officer Johnson was [sic] escorting Inmate Hall, Odell, DC# 490706 to C-dorm. When approaching the entrance of C-dorm, Inmate Hall pulled away from my custodial touch and fell to the ground, face down. Once Inmate Hall was on the ground, I observed he had broken his hand restraints and was pulling his hands out from underneath him. I gave Inmate Hall a verbal order to submit to hand restraints, but he refused. I placed my right hand on his left shoulder and again ordered him to submit to hand restraints. Inmate Hall became combative and attempted to strike me with his left elbow. Force was used to protect myself. . . . Lt. Leavins observed this incident.

(Doc. 179, Ex. 1).

---

his head on the floor causing pain, with no legitimate purpose other than to cause pain, violates the Eighth Amendment even though the injuries, a few bruises, are not significant).

Disciplinary hearings were held on both charges on January 31, 2006, with the hearing on the disobeying order charge held at 8:35 a.m., and the hearing on the unarmed assault charge held ten minutes later, at 8:45 a.m. (Doc. 179, Exs. 7, 10). The disciplinary team was comprised of Officers Gielow and Sanford (Doc. 16 at 14; Doc. 179, Exs. 7, 10; Doc. 181, Affidavit of Officer Gielow ¶ 5; Affidavit of Officer Sanford ¶ 6). At the disciplinary hearing on the unarmed assault charge, Hall requested that Officers Gielow and Sanford hear the testimony of inmates who were standing in the canteen line at the time of the incident, but Officers Gielow and Sanford denied his request (Doc. 179, Ex. 7; Doc. 181, Gielow Aff. ¶¶ 6–13, Sanford Aff. ¶ 9). Hall also requested that Gielow and Sanford review the use of force video of the incident, but they did not do so (Doc. 179, Ex. 7; Doc. 181, Gielow Aff. ¶¶ 14–17, Sanford Aff. ¶ 10 ). Hall was convicted of the disciplinary charges (Doc. 179, Exs. 7, 10). The basis for the decision on the unarmed assault charge was the following:

> Based in part on Officer W.R. Sutton's written statement and confirmed in the investigation that I/M Hall "became combative and attempted to strike" Officer Sutton with his left elbow. He called for any and all inmates who may have been standing in the canteen line during this incident and his request was denied. He called for the use of force video, but it was not reviewed by the investigating officer. It was noted that he had some scrapes on his forehead, he stated was from the officer slamming him to the ground, and not from him pulling away and falling on the ground. He requested that multiple pages of information that he had written down be read during the DR hearing and that request was denied after briefly reviewing the information, that did not offer any other evidence than what was presented by the investigating officer. The written pages appeared to be appeal material, and nothing to consider during the DR hearing process. All witness statements were read and considered.

(Doc. 179, Ex. 7). As to this charge, Hall was sentenced to sixty (60) days in disciplinary confinement and a suspension of privileges for fifteen (15) days (*id.*). With regard to the disobeying an order infraction, Hall was sentenced to disciplinary confinement for thirty (30) days, to run concurrently with any other disciplinary sentence (Doc. 179, Ex. 10). Additionally, Hall's custody status was upgraded to Close Management I, a more restrictive status (Doc. 16 at 13).

The DOC regulations governing a prisoner's presentation of evidence at disciplinary hearings are set forth in Rules 33-601.301–.314 of the Florida Administrative Code. The regulations provide that the charged inmate waives his opportunity to present witnesses, either by written

statement or live testimony, unless he completes and signs the appropriate form.  Fla. Admin. Code
R. 33-601.307(3)(d) (2002).  The rules further provide that inmate witnesses shall not be routinely
called to provide live testimony at disciplinary hearings because doing so would pose a potential
security risk and interfere with the orderly operation of the institution.  *Id.* at 33-601.307(3)(a, b)
(2002).  However, witnesses may present live testimony if the hearing officer determines that the
charged inmate's reason for requesting the live testimony overcomes the security and operational
burden of facilitating the request.  *Id.* at 33-601.307(3)(c).

 In their motion for summary judgment, Defendants Gielow and Sanford contend that the
evidence shows that there was no due process violation during the disciplinary proceedings because
there was some evidence to support the disciplinary charges, and the proceedings complied with the
procedural requirements of Wolff (Doc. 179 at 7–11).

 Viewing the evidence in the light most favorable to Hall, the court concludes that Defendants
have met their initial summary judgment burden because they have successfully negated Hall's due
process claim by showing that he received the due process protections required by Wolff and Hill.
Initially, with regard to the disciplinary proceeding for disobeying an order, Hall cannot establish
that he had a constitutionally protected liberty interest in remaining free from disciplinary
confinement for thirty (30) days.  As previously noted, the undisputed evidence shows that Plaintiff
was sentenced to only thirty (30) days of disciplinary confinement on the disobeying order charge.
The Supreme Court held that a restriction of this degree and duration is insufficient to trigger due
process protections.  *See* Sandin, 515 U.S. at 486 (thirty-day placement in disciplinary confinement
was not atypical or significant enough to trigger due process protection); *see also* Rodgers v.
Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998) (placement in administrative confinement for two
months did not constitute deprivation of constitutionally protected liberty interest as defined in
Sandin).  Therefore, Hall cannot establish the deprivation of a protected liberty interest, or an
accordant due process violation, with regard to the disciplinary proceeding on the disobeying order
charge.

 With regard to the unarmed assault charge, the record evidence shows that during the
investigation of this charge prior to the hearing, Hall provided a written statement of his view of the
charge and any defense he might have had (Doc. 79 at 42).  Additionally, Hall was notified of his

opportunity to present testimony from other witnesses at the disciplinary hearing (Doc. 179, Exs. 2, 3). A form titled "Witness Statement" notified Hall that if he had material witnesses, he must list them on the form, and failure to list witnesses on the form would result in a waiver of the opportunity to call witnesses either live or by written statement (*id.*, Ex. 3). The form further notified Hall of the following:

> As a rule the testimony of inmate witnesses will be presented by written statements instead of witnesses appearing at the hearing. Multiple disciplinary hearings are often held at one time and limited staffing prohibits the routine retrieval and escort of inmate witnesses to the hearing and back to assignments. Further, written statements minimize the disruption of work and program assignments of inmate witnesses. A request for live testimony for witnesses not listed below must be made at the hearing and supported by cause sufficient to overcome the concerns noted above.

(Doc. 179, Ex. 3). Hall indicated on the form that he did not have any witnesses, and he signed the form acknowledging this (Doc. 179, Exs. 2, 3). It is undisputed that at the disciplinary hearing, Hall requested that live testimony be presented from "all inmates who may have been standing in the canteen line" during the incident (Doc. 179, Ex. 7; Doc. 181 Affidavit of W.L. Gielow ¶¶ 6, 7; Affidavit of Sanford ¶ 9). Officers Gielow and Sanford denied Hall's request because the presentation of those witnesses would have caused disruption to the disciplinary process, and Hall presented no exceptional circumstances or justification as to why the disciplinary hearing should be postponed to obtain statements from inmates which he did not earlier disclose to the investigating officer (Doc. 181, Gielow Aff. ¶¶ 7–10, 13; Sanford Aff. ¶ 9). With regard to presentation of the use of force video, it is undisputed that Hall identified the use of force video on the Documentary or Physical Evidence Disposition form, thereby indicating that he wished the disciplinary team to consider the video during the hearing (Doc. 179, Ex. 4). Hall indicated that the video would show that his handcuffs broke loose and that he had a "knot" on his head (*id.*). The investigating officer did not review the video, noting on the Disciplinary Investigative Report, "Photo camera not viewed due to no camera outside of dorm" (Doc. 179, Exs. 2, 5). Officers Gielow and Sanford were aware that Hall wanted them to review the use of force video, and they were aware of Hall's description of what the video would show (Doc. 179, Exs. 4, 7; Doc. 181, Gielow Aff. ¶ 14, Sanford Aff. ¶ 10). Officers Gielow and Sanford did not review the use of force video because the investigating officer did not make the video available to them (Doc. 181, Gielow Aff. ¶¶ 14–17; Sanford Aff. ¶ 10). An

investigation of the use of force incident was conducted after the disciplinary hearing, and that investigation showed that there was no video of the actual incident because videotaping did not occur until after the force was used (Doc. 179, Ex. 6; Doc. 181, Gielow Aff. ¶ 16; Sanford Aff. ¶ 10).

Viewing the facts in the light most favorable to Hall, Defendants demonstrated that they complied with the due process requirements for inmate disciplinary proceedings. With regard to the calling of witnesses, during the pre-hearing investigation of the charge, Hall was provided an opportunity to list the witnesses whose testimony he wished to present on the Witness Statement form, and he was notified that he waived his right to present live or written testimony from witnesses if he did not list them on the form. Hall indicated on the form that he did not wish to present any witness testimony. When Hall requested to call inmate witnesses for the first time at the disciplinary hearing, consisting of "all inmates who may have been standing in the canteen line," he did not offer a reason for failing to request such testimony prior to the hearing. Officers Gielow and Sanford explain in their affidavits that they denied Hall's request to present testimony of inmate witnesses due to the disruption it would have caused to the disciplinary process and due to Hall's failure to present any exceptional circumstances or justification for postponing the hearing to obtain statements from inmate witnesses, in light of his failure to list any witnesses on the Witness Statement form. The decision not to allow Hall to call inmates who were standing in the canteen line as witnesses was logically related to "internal order," which the Supreme Court identified as a correctional goal that must be balanced against the due process rights of inmates, especially in light of Hall's failure to list any witnesses on the Witness Statement form prior to the hearing and his failure to present any justification for postponing the hearing to obtain witness statements. *See* Bell v. Wolfish, *supra*.

With regard to the videotape, the evidence shows that Officers Gielow and Sanford knew that Hall had properly requested that the use of force video be considered at the hearing, and they knew that Hall believed the video would show that his handcuffs had broken apart, and he had a "knot" on his head, as evidence by Gielow and Sanford's signatures on the Documentary or Physical Evidence Disposition form (Doc. 179, Ex. 4). Defendants explain that they did not review the video because the investigating officer did not review it or make it available to them. Documents submitted to the court by Hall in support of a discovery motion show that Captain Leavins and

Officer Bobe began video taping at approximately 2:20 p.m., but the camera malfunctioned (*see* Doc. 79 at 26, 28, 31, 34, 60). Officer Bobe retrieved another camera and began recording at 2:21 and continued recording until Hall was examined by the medical department and returned to a secure area (*id.* at 60). The documents show that the videotaping began after Officers Sutton and Johnson had re-secured Hall and just before they assisted Hall to his feet and escorted him to an area to await his medical examination (Doc. 79 at 34; Doc. 179, Ex. 6). Even if the use of force video depicted what Hall suggested, that is broken handcuffs and a "knot" on Hall's head, this evidence would not have been relevant to the charge that after Hall fell to the floor, he became combative and attempted to strike Officer Sutton with his elbow, which was the basis for the disciplinary team's decision, because these events occurred before the videotaping commenced. *See* Pannell v. McBride, 306 F.3d 499, 502–03 (7th Cir. 2002) (prisoners do not have the right to present evidence that would be irrelevant, repetitive, or unnecessary) (citation omitted). Furthermore, the record shows that Hall was afforded ample opportunity at the hearing to assert his view of the charge and any defense he might have had, and he did so both verbally and in his written witness statement (*see* Doc. 79 at 42; Doc. 179, Ex. 7).

Finally, the statement of Officer Sutton, that Hall became combative after he fell on the ground and attempted to strike him with his elbow, constitutes sufficient evidence under Hill to support the disciplinary decision. *See* Hill, 472 U.S. at 456 (prison guard's testimony and copies of his written report supported conclusion that the evidence before the disciplinary board was sufficient to meet the requirements imposed by the Due Process Clause); *see also* Hartsfield v. Nichols, 511 F.3d 826, 831 (8th Cir. 2008) ("[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation ..."); Hrbek v. Nix, 12 F.3d 777, 781 (8th Cir. 1993) (same).

The evidence presented by Officers Gielow and Sanford negates Hall's contention that his due process rights were denied during the disciplinary proceedings. Hall has failed to respond with evidence creating a genuine issue of material fact. Therefore, Officers Gielow and Sanford are entitled to summary judgment on Hall's due process claims.

C.     Third and Seventh Amendment Claims

As a final matter, the undersigned notes that Hall includes two additional claims in the Statement of Claims section of the Second Amended Complaint. He states, "The (3) Third Amend. but in a manner to be prescribed by law. . . . The (7) Seventh Amend. where the value in controversy shall exceed ($20) twenty dollars." (Doc. 16, Statement of Claims). The undersigned construes Hall's reference to the Seventh Amendment as a demand for jury trial in this case. Hall's Third Amendment claim is frivolous. The Third Amendment provides, "No Soldier shall, in time of peace be quartered in any house, without the consent of the Owner, nor in time of war, but in a manner to be prescribed by law." Hall does not allege that soldiers are being quartered in any home he owns; therefore this claim should be dismissed as frivolous.

IV.    CONCLUSION

Upon consideration of Hall's claims and the evidence submitted, the court recommends that Defendants' motions for summary judgment be granted and Plaintiff's Third Amendment claim be dismissed as frivolous.

Accordingly it is respectfully **RECOMMENDED**:

1.    That the motion for summary judgment filed by Defendants Leavins, Sutton, and Johnson (Doc. 120) be **GRANTED**.

2.    That the motion for summary judgment filed by Defendants Gielow and Sanford (Doc. 179) be **GRANTED**.

3.    That Plaintiff's Third Amendment claim be **DISMISSED** as frivolous.

4.    That the clerk enter final judgment in favor of all Defendants.

At Pensacola, Florida, this 18th day of August 2009.

/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

# NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).